Good morning, ladies and gentlemen. We have four cases on the calendar this morning. A patent case from the Patent and Trademark Office, two patent cases from the District Courts, not our usual diversity, and a case from the Claims Court which is submitted on the briefs and will therefore not be argued. The first case is In Re R & S Trading Company, 2007-14-12. Mr. Garsha. Good morning, may it please the Court. My name is Mark Garsha, and I represent the Patent and Re R & S Trading Company. I have reserved five minutes for rebuttal. I'm here to discuss two points today. There are other issues, but unless there are questions, I'll leave that to my colleagues. The first issue was claim interpretation and the meaning of the phrase of flexible coding forming a continuous layer that substantially covers the entire top, bottom, and side surfaces of the compressible structure. The second issue that I'd like to discuss is the failure of the Patent Office and the examiner to consider the prosecution history of the parent original patent application. Tell me quickly why that matters, the prosecution history of the earlier patent. During the prosecution of the parent, we had some objections by the examiner and some responses to office actions that allowed me to put in the term continuous and help define the meaning of the term continuous during the parent application. I believe if we look at that prosecution history, we'll clearly identify what the meaning of the term continuous is. Continuous is a plain ordinary English word that almost needs no definition. The question is how you apply it to the prior art here, right? Cold. That has seams, right? So isn't that really the issue before us? Not so much the definition of continuous? I would agree that we don't necessarily have to look at the definition of continuous, but I think again the prosecution history and how we arrived at what it meant is important because there was a give and take between the examiner and myself. I'm the one who prosecuted the case as to how we should define it. What's the key interchange in the prosecution relating to continuous that's relevant here? We received a rejection early on of our claims and the rejection was based on prior art that showed a layer that went continuously around the shoe. So in order to overcome that prior art... And that wasn't cold? That wasn't cold, correct your honor. After that I added the term continuous, provided a description of what I meant by that, taking it from the specification that an example of continuous is the dipping step. I believe that in the prosecution history after that, you can see the examiner in the parent case then found references where the layer would continuously around all the way around the shoe. And I believe if I'm able to present that to the examiner, the re-examination examiner, it may have changed his mind on this. But the examiner considered that irrelevant and the board did not consider the issue. It also adds, there's obviously a public notice function here to the public because re-examination involves an issued patent, it's been fully examined, there's a full record. I'm sure our competitors have looked at the history and they've come to their conclusions as to what continuous meant and what we intended it to mean. In my view, the interpretation given by the board is much broader than an unreasonable interpretation in view of the prosecution history. That was my second point. I'll move on to my first point. We wanted to keep you on your toes. The claim construction issue, if I might pass up samples from the patent owner to the board, if I'm permitted to do that. Are these in the record? They were shown to the board as demonstrative only, but I used them as demonstrative. Is there any... No objection yet. Okay, fine. Please present them. I have one set for each. I can warn you they've never been used, so you don't have to worry about them. People haven't worn those shoes previously. Also, it might be a little bit early, seeing we're in January, and I'm also a little concerned, being from Southern California, that you may think this is the only type of case that I get, but I do have others. This isn't the sole case that you get. You can see the flip-flop has the typical thong on the top to hold it in. The bottom is a two-piece construction. It has an outsole, that's the black, and the insole is the blue. The insole is what we're focusing on here today. It has a two-part construction, the white compressible material, and then it has the flexible coating that forms a continuous layer along the top, along the side, along the bottom. The bottom is a little bit harder to see. If you look closely, I have to take my glasses off, but you can see the blue coating runs all the way along the bottom between the black and the white. Now, Cole was asserted to anticipate the claims of the patent. Cole comes up short for two reasons. Number one, Cole does not discuss a layer that runs along the bottom of the compressible foam structure, number one. Number two, it doesn't teach the continuous aspect of this either. As to the first, it wasn't clear to me upon looking at your brief before the board that you raised the first of those two issues. You hammered that pretty hard in your reply brief here, although you would allude to it only very briefly in your opening brief before us. But in looking at your brief before the board, I didn't see where you raised that issue. The issue was raised in connection with the cloths as a whole. What I argued to the board and placed in the brief was the limitation, a flexible coating forming a continuous layer that substantially covers the entire top, bottom, and side. Well, you put that whole limitation and issue, but I didn't see you making the argument that Cole did not anticipate because it didn't cover the bottom of the insole. Yeah, I understand. Did you make that argument? At the hearing, the board raised the exact same question that you did, which is, am I contesting whether Cole shows a layer on the bottom or not? And I was very expressed saying that, yes, no, Cole does not teach that. It's like a sight to the eye. Well, I've read the... You came back in the discussion, the back and forth. It's a little hard to follow because the questions came at you from different directions. It seemed to me as I read the argument that you were reiterating that Cole did not teach a continuous covering, not that Cole didn't teach the covering of the bottom. I didn't see that argument explicitly made. And when you were asked, are you making two arguments or one, you said, this is the one argument I'm making as I understood your argument. But in any event, you didn't make that argument in your brief before the board, correct? Not that I relied on the limitation as a whole. I agreed as to breaking it into two arguments, I didn't do that. Or even making as part of one argument expressly saying that anticipation is not present because there is no covering of the bottom. That argument was not made, correct? I can't specifically say, but I think it's included in the whole clause that I presented to the board. And I think the board obviously had a problem with that particular element of the claim also and presented that to me. And when presented that question by the board, I was very clear that Cole does not teach a bottom layer, a covering on the bottom. So I think it was improper for the board then to go and say, there's an anticipation here when they do not show a covering on the bottom and instead relying on, which I don't believe there was, an admission from me that there was not a covering on the bottom. Moving on to the continuous layer feature, the board then argued, and then the examiner argued, that if you take a sheet of material and wrap it around the compressible foam, bring it around to the bottom and stitch it together, that that's a compressible layer. And I disagree with that. I think if you look at it in the context of the claim, that when you take a sheet of material and wrap it around and form that continuous layer to substantially cover the top, bottom, and sides, you have a big discontinuity down the middle at the back of the sheet. This is a discontinuity, and I think it would be an unreasonably broad interpretation of the claim to call that a continuous layer. Therefore, I request that the court reverse the decision of the board affirming the examiner's rejection of the claims in view of Cole for anticipation.  I'll let the case be remanded for consideration in the prosecution district. Thank you. Thank you, Mr. Gosher. We'll save the rest of your time. Mr. Piccolo. May it please the court, I just have two points to make, and then would be happy to answer any questions the court might have. As to Judge Bryson's recent inquiry about the bottom of the insole, Cole, where it discloses completely covering insole 12, takes care of the bottom, and that's how we addressed it, that in the case there were points of cover. Yes, Your Honor. That was not the way I... Page 203 of Cole, of the record, column 5. 203 of the joint appendix? Yes, Your Honor. All right. Column 5. All right. With the first full paragraph that begins at about line 4, insole 12 is being made there, and what's happening is that it is being covered. As Cole discusses throughout the reference, you cover things, and insole 12, which is shown in figures 3 and 2, the formed component, is being completely covered. It's being manufactured. The exposed surfaces, right? Well, insole 12 is being made first, Your Honor. Yes. All the exposed surfaces, which all the surfaces, there are many surfaces referring to page 196 of the record, figures 3 and 2, insole 12 shows both the bottom and the top, and as Cole discloses, the whole insole is being covered. Well, you know, obviously from my question, what I'm concerned with is the extent to which, when we say exposed surfaces, there's a limitation to some surfaces. The implication is that some surfaces are not exposed, and my at least initial look at this suggested that at least in the completed flip-flop or whatever it is, the bottom of the insole is not exposed. Now, of course, during manufacture it may be exposed, but what indicates to you that Cole, in referring to covering the exposed surfaces, and by implication not the non-exposed surfaces, is intended to cover all the surfaces during the process of manufacture? Is that that paragraph for covering is addressing only insole 12, and that paragraph talks about covering the workpiece, the formed component, which is clearly insole 12 in figure 3. That is the formed component with the many different surfaces that are either horizontal or vertical on the indents. There are many surfaces there, and they are the formed component, which is being completely covered, and at that point they are all exposed because only the insole is the workpiece at that point. That was the board's rationale. Why would the patentee have used the word exposed surface if I understand you, you're saying really not all surfaces? Correct, Your Honor, two reasons. One, exposed can mean, as the examiner and the board interpreted it to mean, that you have horizontal surfaces and vertical surfaces. If exposed were not there, it may just mean the flat surface, this surface or the top, whereas it can mean the exposed surfaces include the vertical surfaces on the indents on the formed component, figure 3. So there's a range of covering that can occur. Cole teaches you completely cover things to a seam, as Judge Lurie mentioned about seam. Seamless is in Claim 17. That's how it overcame Cole here. What we have is a formed component, and you can cover all the surfaces or you can partially cover the formed component, and the claim just requires substantially cover. Do you think that the applicant raised the issue of whether the bottom surface was shown to have been covered in Cole before the board? Not clearly. And we, based on the breadth of Cole and its many different embodiments of using different materials to cover, covering completely, covering less than completely, we felt that the reference anticipates the claim and to the extent that applicant didn't raise that limitation in total, substantially covering, it was met by Cole, given the breadth of Cole, the different embodiments taught in Cole, and that the board was making a finding of disclosures in Cole meeting that part of the claim, substantially covering with a continuous layer. And here we have substantial evidence that the surfaces are covered, completely covered, with PVC, and there could be less than complete covering, but substantial evidence supports meeting that limitation that the insole was at least, as applicant claims, substantially covered. Mr. Fidele, you're basically relying on the argument that column five at page A203, from basically lines four down through lines 54, are talking about sort of a fabrication process. Is that correct? Yes, Your Honor. And here we have, after the reference talks about different types of full coverings, it's in many of the drawings, and much of the specification had to cover things to a scene, and again, that's why claim 17 is distinguishable from Cole. One question, is there anything else in the record, other than what you've been discussing with Judge Bryson, that would indicate that the insole, item 12, is completely covered, or substantially or completely covered? Just looking beyond, is this what you rely on? Yes, Your Honor. The insole 12 is manufactured as a separate entity, and this part of the reference goes to figures three and two, and it says you can completely cover that formed component, which means substantially cover in claim one, and that is the substantial evidence that supports the Board's finding of the limitation being met, and the anticipation finding in total. Now the Board, as I read it, doesn't address this covering the bottom, for lack of a better term, argument. They say, instead they make a finding of fact, as I understand it, that there was no dispute on that. They do that, Your Honor, and they expressly refer to the examiner's finding on the matter, that where Cole discusses in column five, completely covering the insole using PVC, that meets that part of the claim. So essentially, they did it both ways. This is an anticipation case, and they found that claim one was met by Cole. That's again on the, as I understood it at least, on the argument that there was no dispute on this, correct? Yes. I take it you're referring to, on the one hand, the factual finding at A11 and the legal discussion at A14, correct? Yes, Your Honor. Right. And both of those are by way of saying there was no dispute, as the board understood the argument, on that issue, correct? Correct, Your Honor. All right. So they're not saying, independent of a waiver of the argument, that that's the way they are ruling, correct? No, they're not expressly saying that. The finding is there in Cole about completely covering the surfaces of the formed component, and how someone would read that part of Cole is they're manufacturing the insole, and the rest of Cole before was about covering things to a seam, and it's there that you cover the workpiece. Straps were discussed beforehand, and to a person skilled in this area, what this would mean is, especially when only insole 12 is being built now, it does not have further description, well, this horizontal, this vertical surface is not an exposed surface, or this crevice down here is not an exposed surface, for it can be read that, for emphasis, it's going to the extent of covering all exposed surfaces, because that's what's being addressed right now, insole 12 as shown in figure 3. It was not discussed at all before about that if the insole fits in the sandal, none of these other surfaces are exposed, because what's happening here is only the insole is being manufactured, and this passage has quite a range, that you can have no cover, that's item 2 in column 5, about lines 13 to 14, or you can completely cover all of insole 12. So here, with the many variations that are going on, there is rationally, and the corresponding was reasonable, a range or a continuum, from no covering all the way up to completely covered, that is all that makes sense about this passage, is that it is disclosing variations of the level of covering, of how much covering, from completely covering all of insole 12, to not completely covering it, to partially covering it, to not covering it at all. And the claim broadly recites substantially covering it, and that is met by both figures 3 and 2, of cold and the discussion of manufacturing insole 12, which occurs before the insole is attached to the outsole. So, coal is about covering to a seam. It clearly is figure 5 and 6, where the straps show at page 197 and 198 of the record, show covering the inner component of straps, you cover to seam 64. Coal has, when building insole 12 by itself, covering all of it, or covering a little less than all of it. And the covering completely meets claim 1's broad limitation, substantially covering as the examiner, and then the board, in affirming the examiner's decision, he affirmed those are reasonable findings that are supported by this substantial evidence. So, in closing, the board did take that position that it was not clearly articulated, and they reached the right result of affirming the anticipation finding, regardless of if applicant did, in his argument section to his brief and at oral argument, raise the substance of that matter. Either way, the board's decision is supported by substantial evidence. Thank you, Mr. Piccolo. Mr. Gosher has some time left to rebut. Thank you. This will be brief. Just two comments that I'd like to make. One is concerning the completely covering. I think the court understands the position that I would take with this. The passage from the patent talks about completely covering. The only place it says completely covering, it then talks about completely covering the exposed surfaces. And I think you have to give meaning to the word exposed. But it does talk, excuse me for interrupting Mr. Gosher, but it does talk in terms of exposed surfaces of a formed component. And it does seem that that discussion, that section of column five there, I guess, is directed to the manufacturing process. And Mr. Piccolo's argument is that this section discloses a formed component, I guess basically the white part here, in the construction process, and it is completely covered. What is your answer to his argument that we're talking construction and we're referring to a formed component? Again, I'd point to the word exposed surfaces, that you should give that word some meaning. And they wanted me to even put the word in there that they meant just totally covering the formed component. By saying exposed surfaces, they meant those portions if you look at figure one. You can see where the outsole is and it covers the bottom and comes up the side. This is figure one of pole. So if you see figure one of pole, you have an outsole that covers the insole. So what I would read from that is you only need to put the covering just a little bit down the side because what's above the outsole is what needs to be covered. Anything below that, the patent tells you, just worry about the exposed surfaces. That's what it means to me. Anything further? Just the last point. I'd like to point specifically to the transcript of the oral hearing pages D10, A11. That's where the discussion came up concerning covering at the bottom. At the top of page 11, I think there's a couple places that I reiterate. This is actually A48 in the appendix, right? My mistake. Right. A47. 47 and 48. Right, 47 and 48. Those are the two pages where the issue came up with the board. And specifically at the top of page 11, Judge Del Mendo had asked me about whether I'm relying on the bottom being covered in coal and expressly said I am relying on that the bottom is covered, and that I'm relying on that limitation of the claim. It goes on down to line... So it starts on A47, line 5, and goes down to A48, line 14. That's where the discussion is. I didn't waive that issue. Thank you. Thank you, Mr. Gosher. The case will be taken under revisal.